This is an appeal from the Eastern District of Washington. We're asking the court to reverse his sentence. Mr. Nichols was indicted on April 19th, 2005, and he subsequently pleaded guilty to felon in possession of a firearm. And thereafter, during the trial, he was found guilty of possession of a firearm. During the process, he pretty much spilled his guts to the government with regard to giving them information and admitting being involved in actually numerous guns and a burglary ring and a gun fence, fencing ring, and on September 26, 2005, when he was not quite 22, he was sentenced. He was sentenced to 57 months, which was a low end of the standard range, based on an offense level of 21 and a Category 4. What we're asking the court to do is reverse, in part, the sentence that installed a four-level increase for using a firearm in a prior felony. We're asserting that the district court erroneously applied United States Sentencing Guideline 2K2.1 b.5. And in pertinent part, b.5 reads that if the defendant used or possessed any firearm in connection with another felony offense, enhance him four levels. So the court did enhance him four levels, and we're asking this court to remand it with instructions to back off those four levels so he would end up back with a 17, with a lower standard range of 37 to 46 months. Would the prior felony that is involved here be part of the related conduct to this offense? This is not a relevant conduct issue as I see it, because there was no connection between his prior assault, third assault, for pulling a gun on, a Glock on somebody, and this, the instant indictment. Nor was a Glock listed in the instant indictment. I think you're right to focus on the connection, but in this case, isn't there a very strong connection between the Glock? Didn't your client and the offenses of conviction in this case, didn't your client admit in state court to using that Glock weapon in the assault that was committed on the same day? And to the probation officer, he, or at least it appears in the PSR, he then took that gun and two others and dropped them off at the Sinclair's house, which is, you know, further possession and part of this smuggling ring in order to get methamphetamine. So if, and I happen to believe the correct analysis is focusing on the nexus for relevant conduct determination. But it seems to me all these events occurred on the very same day. The first two guns in the indictment, I don't know why the FBI or the prosecutors didn't list the Glock, and it wasn't listed in the indictment. You're correct on that. But the other two guns that he had with him, with the Glock, at the assault the same day, all found their way into the same place at Sinclair's house. Very confusing fact, Your Honor. There's no evidence that the Glock used way back in December when he was convicted of the third assault and the first Glock back in December of 2004. There's no evidence it was the same Glock that was at Sinclair's house, and in fact. Except his statement to the probation officer and his, correct? Different Glock, though. It's my understanding there's. That's how he argues later that it's a different Glock, but he did say at one point that it was the same Glock. And then later he came back and said, oh, no, it wasn't. That was someone else's Glock. Oh, Your Honor, I missed that. I apologize. It was my understanding that there was no connection between those two Glocks, the one from way back when in the assault and then in the, in this realm. But, and Mr. Hicks was the trial counsel for the government. Maybe he could clarify that point. But if we look at the appellant's argument here, and if we look at the dissent in United States v. Mann, 315F3-1054, Eighth Circuit case, 2003 from Missouri, what Judge Arnold says in his dissent is that if you, among other things, if you go up and look at 2K2.1B4 just above the statute that we're talking about, the enhancement we're talking about, that calls for an enhancement if any of the firearms were stolen. And, of course, the context of that statement is that if any firearms listed in the indictment were stolen, otherwise it wouldn't make sense. And he points out that the identical phrase in close proximity to the statute B-5 we're looking at should carry the identical meaning, and so that the Glock to be used as an enhancement here should have been listed in the indictment in Mr. Nichols' case. In addition, of course, he couldn't get an en banc vote on that. He couldn't get the Eighth Circuit to go en banc on his dissent, as I understand. They saw that, and it went. So it's. He had two judges against him, and apparently he couldn't get enough votes on the circuit to take it. Sure. And I also noticed, however, Judge Arnold pointed out that the two-judge panel, the majority, just glossed right over the rule of lenity. That may well be, but it didn't carry the day. And what we have is a holding from that circuit plus two other circuits to say that any means any. We also have law in our circuit that we don't create circuit splits unless we have a good reason for it. With three circuits now having gone to mean any means any and not the, on what basis do you suggest that we should create that circuit split, that is, follow the dissent of the younger Judge Arnold? Your Honor, in my review of the case law, I only found two circuits that I think were on point. And I think what I had to. Fifth, eighth, and tenth. Well, the fifth, eighth, and tenth, the tenth was the Davis case. As a Jardine. That was a 10-day-old carjacking, and that was a relevant conduct case. As I read that. Well, be that as it may, you've got at least two and none on the other side. And I had to really look at those cases. And I believe those are relevant conduct cases. Your Honor. The question still stands. If we have two circuits going one way and to go your way, we would have to create a split. What is so unreasonable about those other two circuit cases that we should do something? All I can say in answer to the Court's question is that Judge Arnold's dissent was brilliant and should be followed. You're just trying to set us up. You know we're going to get reversed in the court. But the other point is, and Judge Warlaw, you had mentioned you thought it was the same Glock. It's my understanding they were two different Glocks. And that's the basis of another point of contention, is that 2K2.1 is an offense conduct statute. And both in Mann and here, it was my understanding there was nothing that connected the prior weapon to the instant indictment and the scenario surrounding the indictment. I see your case as more as a relevant conduct case. In all these events that led to him being arrested for a felon in possession, that assault on July 18 is part of it. Well, the assault, as far as a relevant conduct under 1B1.3, I would not say that an assault from many, many months ago was the same course of conduct. No, but read in conjunction with the specific offense characteristic in 2K2.1B5. That is, you shouldn't read 2K2.1B5 any broader than what you would read, how you would read the relevant conduct requirement, which is in the general part of the guidelines. I don't fully understand the court's question, but I disagree that it's a relevant conduct nexus between not only the firearms listed in the indictment and the firearms that he admitted to being involved in and the old assault. It wasn't a similar modus operandi. It wasn't a part of a single episode. It wasn't substantially connected by victims or accomplices or purpose. That's my understanding of the fact, Your Honor, and so that's why I'm arguing against it. It was connected by the guns in the Sinclairs, right? Different guns. And that is the basis of our... Then would that then, but the Glock wasn't listed in the indictment in this case. So under Judge Arnold's analysis, any gun you would read has to be any gun listed in the indictment. That's correct. A stolen gun, any of the guns are stolen or if any of the guns in the indictment were used in a prior, then you get those enhancements, right? I would... That's your reading. I would still argue the dissent. We're okay on that? Yes. Okay. So now it turns out that in the case of the prior, it was not the listed gun, but it was the Glock was the same Glock that had been caught up in all of this... I would still argue... It was the same Glock all the way through. I would still argue that because of the time difference and the different type of old felony where a firearm was involved, that it was not relevant conduct. But why isn't your answer then any means has to be listed, regardless if it was relevant conduct or related conduct? As long as it's not the same gun listed, then any means any within the two subsections, sequential subsections. Well, I'm arguing both. Those are both arguments I believe that would still substantiate the erasure of the four-point enhancement that the trial court installed. I hate to just beat a dead horse, but I just want to say in the PSR itself, it talks about the offense conduct. And what we're looking at when we're looking at this particular enhancement is a specific offense conduct enhancement. And the offense conduct is described by the probation officer, which I think we still take and less challenged, is that it starts out with paragraph 11, the assault. And he has the Glock. It may not be the same Glock. He's still got a Glock. And shortly after the police are called by the victim of the assault, he runs over to his friend Sinclair, who has admitted that he, that Nichols had bought a safe, which Sinclair held for all their gun trafficking, and hides three guns, two of which are the Sterling Brand .380 and the Lorsen .380 that are mentioned in count one of this indictment. Isn't that true? Doesn't that bring this all into, it's, it brings it all into the specific offense characteristic for this particular charge. If it was the same Glock, I understand what the Court's saying. I'm saying, well, we don't know if it's the same Glock or not at this point. Well, then I disagree, because the M.O. of the old assault was different than this. This was, these weren't assaults. No, we're talking about the assault that led to his hiding the three guns together, two of which are named in this indictment, the federal indictment, at the same place. It's all part of one common trafficking scheme. I don't believe that an assault of crime of violence against another person has a nexus to fencing burglarizing homes and fencing firearms, on the other hand. I see those as two totally different scenarios and two M.O.s and not substantially connected by victims, accomplices. Mr. Sinclair didn't help him do the, appoint the gun and create the assault. Mr. Sinclair had the guns for him when he came and dropped them off at his house, including the Glock. We're talking about the Glock. And the gun that the witnesses observed when he opened his jacket that was on his chest, which presumably was either the Loring or the other one. Thank you. Your time is over. Thank you, Your Honor. Thank you. Mr. Sinclair. I'm pleased to court Earl Hixson on behalf of the United States. There was a question that was asked, why wasn't that gun originally charged? And the reason why it was not originally charged is because the only proof was as to that were found in the safe, and witnesses had indicated that Mr. Nichols had put something in a, I believe it was in another room in the house. And that they, but they weren't certain at the time that this was originally charged, that that was the case. And so then the next issue became, with the defendant being charged in state court, was the government going to pursue charges against Mr. Nichols? And we subsequently did pursue charges against Mr. Nichols. When I, as the court's aware, I initially argued, had some reservations on those four points, although I had indicated to the court that we were going to argue them, and the counsel for the defense said that they weren't. The government believed that a 30-month sentence was reasonable. That's what the government believed under the circumstances. Judge Quackenbush did not. Judge Quackenbush has to start at an application of the guidelines. That's what the law is, and he has to start at a correct application of the guideline. I tried inartfully to withdraw our position because my, I had made a representation to the defendant that I was going to recommend 30 months, and I felt that that was an appropriate sentence. Judge Quackenbush, in reasonable minds, or maybe I wasn't as reasonable as the defense, was he in error by adding the four points? Further analysis, look at it more carefully, in the brief that we've submitted, we maintain at this point in time, I maintain that he was not in error, that the four points were appropriate. Your Honor, you've discussed the course of conduct here. The course of conduct was as a... Before you, would you address, is it the same, is it the same block or not, or we don't know? I can't tell the court. That's all I want to know. And I think, Your Honor, one of the reasons why they deal, why one of the cases deals with any gun is because, this is exactly an example of what could happen, is that any defendant could get rid of a firearm. Any defendant could say, well, it wasn't this particular gun, it was another one. And what we're really saying is that somebody who has a firearm, who's a previously convicted felon in the course of a crime, should get a more serious punishment than somebody who's not a previously convicted felon. So there's a purpose there. Well, can I just do... Yes, Your Honor. Focus at least the question I have. Does the government read the four-level enhancement for use of a prior felony with any gun to not require any sort of connection with the offensive conviction? It could have been ten years ago, or whatever the relevant permissible timeframe is. It could have been a shotgun. As long as he had a prior felony with the use of a weapon, that this number five would apply? Certainly, Your Honor, I wouldn't go back ten years. Okay, fine. Two years. Well, when we're talking about relevant conduct, the cases that you look at is you're looking at time periods of, like, nine months, where the courts have found that there's still relevant conduct. And the reason... It would have been under relevant conduct. The police have to satisfy that, as Wardlaw would suggest. Right. So relevant conduct is also a course of conduct. And what Judge Quackenbush basically said was that this had been taking place over a period of months, but it was a continued type of activity. You had a burglary ring where both Mr. Nichols was the first fence, and then the second fence, who actually disposed of the weapons, was Mr. Sinclair. But this was the same source of conduct. Those were all the firearms were stolen. All of them were stolen in multiple burglaries, and there were approximately 40 firearms that were admitted to by Mr. Nichols. And I'm not questioning... But you don't disagree with the proposition that you can't just, say, use any weapon and then it can be any prior felony, as long as a weapon was involved in it. I don't think... It has to be also analyzed under relevant conduct. I think that you look at relevant conduct. I think that you have to say there has to be some connection. You just can't say, yes, some nexus. You just can't say, well, two years ago he had a firearm, and now that we're charging him with it, we can say that two years ago, when he wasn't charged or anything, he had committed this felony offense. I don't believe that that's a proper interpretation. But I do believe, though, is you do look at the conduct. And in this case, where a person goes directly from where he commits an assault, he's a previously convicted felon who shouldn't have a firearm at that particular time, goes directly to a house, the police show up very shortly afterwards because they're in effect in pursuit because, in this case, there was even an issue as to whether or not it was discharged and that. But in any event, the police show up. The police go in. They get involved in a search, and there are these two firearms there. Now, of course, you also have Mr. Rittlinger, and you have other people who should not be possessing the firearms that are in the safe also, a previously convicted felon. So, in any event, this is all together, and it's part of a common scheme or plan that they've all been doing. The reason the safe was purchased, for example, to begin with, and, again, the Glock was not in the safe, was in order to provide a location where the stolen firearms could be kept under lock and key for a period of time. And then, again, when we talk about the numbers, and nobody's contesting it, but what happened is that you had other firearms that were stolen, and once the defendant, Mr. Nichols, was arrested, he contacted somebody to get those firearms out of the location and got them to a person by the name of Mr. Wattvogel through Sinclair. So this is all relevant content that's all tied together over a period of months. And it's not as if they weren't constantly doing it. They were constantly doing it. And, you know, to steal 40 firearms and be involved in a burglary ring, and it was all for the same purpose, for methamphetamine. So when you look at what I look at, the purpose, and I think that from the prior argument that we have, does it make sense? Because that's what the court asked me in the prior argument that we had. Does it make sense that somebody who gets 29 days in jail, should they not get a point where somebody else should? Should somebody here who used that firearm, whether it's the one that's in the indictment or not, not be punished or be punished the same, merely because he can say that wasn't the one that was in the indictment. When we have clear proof that this defendant said, during the hearing in state court, that that Glock that was found at the house, at Sinclair's house, was the Glock that he used, until this became an issue, and then all of a sudden it was, no, it was a different Glock. And so I think if we look at the purpose. I want to just briefly say that the other issue that was raised. I'm not sure how to read your comparison to the prior case. Are you implicitly conceding that you want this one but not the other? No, what I'm saying is that if we look at it in terms of fairness. Yeah, well, that's a good question. And seriously, when I looked at that first case in terms of fairness, I told you my reaction was, how could this be in terms of fairness, in principles of sentencing? But in this one, I think that the fairness is, is that the person who actually uses the firearm during the course of a felony offense should receive more punishment than a person who's just a felon and is possessing it, say, for whatever other purpose, but he's not out committing crimes with it. And then the reasonableness, I think that the court considered all of the factors under 3553A. He didn't specifically state as to each one, but as to cases such as this most certainly are going to be more compelling, certain compelling factors that are going to outweigh some of the others. And the court looked at the fact of the defendant's youth. The court considered the fact that he was early on addicted to methamphetamine, but when it came back and said, look at all of that, but then look at this horrendous background of violence, and that's where he disagreed with the government, and that's where he said we have to take some action. Also, the court did recommend that he get a drug treatment program, the $500 treatment program there, so he took into account medical necessity, medical needs, et cetera. So I think the court has considered all of that. I have nothing further unless the court has questions. Thank you, Your Honor. Thank you, counsel. United States v. Nichols has submitted, and previously has submitted or agreed to submit on the briefs, United States v. Cortez-Luiz and United States v. Lizarraga-Sedano, and we will take up Sachs v. Office of Foreign Assets Control.
judges: Wallace, Wardlaw, Fisher